Gregory B. Smith (USB 6657)
GREG SMITH & ASSOCIATES
111 East 5600 South, Suite 105
Murray, UT 84107
T: (801) 641-3397
gs@justiceinutahnow.com

*Attorney for Plaintiff, Amanda Bachman*

FILED
U.S. DISTRICT COURT
2018 MAR 26 P 3: 34
DISTRICT OF UTAH
BY:
DEPUTY CLERK
RECEIVED CLERK
MAR 21 2018
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH

| | |
|---|---|
| AMANDA BACHMAN,<br><br>Plaintiff,<br><br>vs.<br><br>ADVANTAGE COUNSELING SERVICES, LLC; and HEATHER ROWLEY (an individual),<br><br>Defendants. | **COMPLAINT FOR LEGAL AND EQUITABLE RELIEF**<br><br>**(JURY TRIAL DEMANDED)**<br><br>Case: 2:18-cv-00246<br>Assigned To : Wells, Brooke C.<br>Assign. Date : 3/21/2018<br>Description: Bachman v. Advantage Counseling Services |

Plaintiff, Amanda Bachman, by and through above-signed counsel, hereby complains against Defendants, Advantage Counseling Services and Heather Rowley, demanding a trial by jury, and seeking relief as follows:

### I.   PARTIES

1. Plaintiff, Amanda Bachman, is a Utah citizen who resides in Salt Lake County, State of Utah.

1

2. Defendant, Advantage Counseling Services, LLC ("ACS") is a limited liability corporation registered to do business in Utah (Entity Number: 8258679-0162; Address: 9035 S. 1300 E., Suite B2, Suite 1001, Sandy, UT, 84094; Registered Agent: Heather M. Rowley; Registered Agent Address: 5 Quietwood Lane, Sandy, UT, 84092).

3. Defendant, Heather M. Rowley, is an individual, the registered agent of record, and the owner of Advantage Counseling Services, LLC.

## II.   JURISDICTION AND VENUE

4. The Court has jurisdiction under the United States Fair Labor Standards Act of 1938, §§ 7, 15(a)(3), 29 U.S.C.A. §§ 207, 215(a)(3); 29 C.F.R. § 778.111. The Court also has supplemental jurisdiction pursuant to 28 U.S. Code § 1367.

5. Venue is proper in this Court (pursuant to 28 U.S.C. § 1391) because the activities took place in Salt Lake County, State of Utah.

## III.   STATEMENT OF FACTS/CLAIM

6. At all times while Plaintiff worked for Defendants, Defendants were her employers and ACS was a covered enterprise for purposes of the United States Fair Labor Standards Act (FLSA).

7. Defendants improperly labeled and paid Mrs. Bachman as an independent contractor, instead of what she was in fact: an employee.

8. Heather Rowley and Advantage Counselling ("the employers" or "Defendants") exercised a high degree of control over Mrs. Bachman.

    a. They told her when to show up at work, and that she could only leave after her sessions were done.

    b. They told her where to work primarily (in a specified office).

    c. They had her attend mandatory meetings.

    d. They set her rate of pay.

    e. She was only allowed to work for them.

    f. She was told she was fired for violating company policy.

9. Mrs. Bachman had no opportunity for profit or loss.

    a. She counseled people, and got paid by Defendants for that. She had no opportunity to make or lose money as an independent contractor would have.

10. She had no investment in the business.

    a. The employers furnished her with an office, and they did all the marketing for their business.

11. There was a permanence of the working relationship: about 19 months.

12. The degree of skill required to perform the work was that of a counselor, which was supervised by Heather. In other words, the counseling had to be done Heather's way.

13. The work Mrs. Bachman did for Defendants was an integral part of the employers' business: Mrs. Bachman was engaged in counseling and the business of Defendants was counseling.[1]

14. Plaintiff was hired on or about September 2016.

    a. For about the first month of her employment for Defendants, Plaintiff worked about 15-20 hours per week.

15. As Plaintiff began to build a clientele, (about mid-November of 2016) Plaintiff's hours increased to about 30 hours per week.

    a. In about April or May of 2017, Plaintiff's hours began to eclipse 40 hours per week.

    b. From the date given above, Plaintiff worked an average of 60 hours per week (in other words, Plaintiff worked more than 40 hours per week).

        i. During this time, Plaintiff was not paid at least $455 per week.

16. Plaintiff was not able to support her family because the pay was so low (her paychecks would be as low as about $4.15 an hour).

17. For about nine (9) months, Plaintiff was often not paid minimum wage, nor was she paid overtime, which she estimates to be about 720 hours of unpaid overtime.

---

[1] The Tenth Circuit has given these factors very recently. *Acosta v. Paragon Contractors Corp.*, No. 17-4025, 2018 WL 1280127, at *6 (10th Cir. Mar. 13, 2018).

4

    a. At sixty (60) hours per week, the minimum wage alone should have been $435, which was not paid.

        i. Straight minimum wage for the extra twenty hours per week would be $5,220.

        ii. The liquidated damages amount is estimated to be at least $5,220.

        iii. The unpaid overtime would also be at least $5,220.

18. During this time, Plaintiff told Heather Rowley ("Heather") that she was not being paid enough.

19. Heather essentially responded by saying nobody was making any money.

20. Heather said that as soon as she started making money, she would look at giving her employees some.

21. On or about December of 2017 – annoyed by Plaintiff raising the pay issue – Heather told Plaintiff that Heather was only making $700 per month.

22. Defendants failed to pay (at times) Mrs. Bachman on time (on her regular pay day).

23. Plaintiff was fired on or about January 5, 2018.

24. The firing was motivated by Plaintiff's request that Heather properly pay her.

25. In other words, Plaintiff (1) engaged in activity protected by the FLSA by telling Heather that she needed to be paid more (it was understood she was not even making minimum wage); (2) Plaintiff suffered adverse action (she was fired) by

5

the employers (Heather and ACS) subsequent to or contemporaneous with such employee activity (Plaintiff complaining about the low wages); and (3) there was a causal connection that existed between Plaintiff's activity and the employers' adverse action.

26. Under 15(a)(3) of the FLSA, by complaining to her employers, Plaintiff "filed a complaint" or "instituted or caused to be instituted a proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3) (1994).

27. In the Tenth Circuit, even the "unofficial assertion of rights through complaints at work" is protected. *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir.1984) (finding that an employee's request for a raise pursuant to the Equal Pay Act was protected activity).

28. After being fired, Plaintiff had an attorney send a letter to her former employers (on February 14, 2018), which again raised FLSA issues, and made Plaintiff's concerns even more manifest.

29. In part, the letter said:
    a. You [Defendants] hired her [Plaintiff] on or about September 2016.
    b. She was a non-exempt employee for purposes of the United States Fair Labor Standards Act (FLSA).

c. She often worked beyond forty (40) hours per week, but was not paid overtime.

d. You paid her "per session," and failed to calculate her straight time from that (and her overtime).

e. She often ran credit cards for your company (at times around three or so per day).

f. She was a covered employee under the FLSA.

g. You felt she had done something wrong, so you withheld money from her paychecks.

h. She is owed that money.

i. She never agreed in writing for you to take the money you withheld.

j. You have said untrue things about her.

k. You have caused her great distress, and have done so with the intent to cause such.

l. You did not maintain proper records of when she worked.

m. Both you and your company were her employers.

n. She raised the issue of your not paying her pursuant to the law, and you retaliated against her by, among other things, suing her in small claims court.

30. Just after firing her, Heather filed a small claims suit against Plaintiff for approximately $9,500.

    a. This was done to intimidate Plaintiff to not take legal action against them.

31. Heather has sent Plaintiff vexing letters to intimidate her, which not only falsely accused her of slander, but also ignored that fact that the "judicial proceeding privilege" extends to statements made prior to the filing of a lawsuit. *Krouse v. Bower*, 2001 UT 28, ¶ 10, 20 P.3d 895, 899.

32. Since being fired, Plaintiff has lost at least $800 of income per month, and that loss of income is ongoing.

33. After Heather received the letter from Plaintiff's attorney, she sabotaged her career by falsely accusing Plaintiff of academic fraud–most likely between February 15th and February 19th:

    a. Heather called the school that Plaintiff attended (LeTourneau University), and stated Plaintiff's practicum hours were invalid *while knowing the accusation she was making was false.*

    b. The School took Heather's word for that, which was Heather's desire from the start.

    c. This resulted in the School's revoking of Plaintiff's degree, and they also banned her from the school, which was Heather's desire from the start.

    d. Heather gave this information to destroy the career of Plaintiff.

    e. In other words, the practicum hours were valid, and Heather knew that before she contacted the School.

34. Heather intentionally engaged in conduct toward Plaintiff with the purpose of inflicting emotional distress,

35. or, where any reasonable person would have known that such would result;

36. and her actions were of such a nature as to be considered outrageous and intolerable in that they would offend against the generally accepted standards of decency and morality.

37. Furthermore, Heather's conduct evoked outrage or revulsion;

38. This was more than simply unreasonable, unkind, or unfair.

39. The conduct has been sufficiently extreme and outrageous to result in liability.

40. The false allegations did inflict emotional distress against Plaintiff, which was the goal of the employers.

    a. This has resulted in emotional/damage to Plaintiff.

    b. Plaintiff has been in therapy, so that she can cope with the damage Defendants have deliberately caused her.

    c. Plaintiff has also been compelled to take antidepressants, so that she can cope with the damage Defendants have deliberately caused her.

41. Regardless as to whether the hours were valid or invalid, Heather called the School to spite Plaintiff (devastate her economically and emotionally) for having asserted her rights under the FLSA.

42. In other words, Heather sought to destroy Plaintiff's life for having raised her rights under the FLSA.

43. At no point did Heather tell Plaintiff that she was not getting enough hours in, or that she was coming up short on her practicum.

44. When it was to the employers' advantage, they took advantage of Mrs. Bachman's skills and scholarly knowledge.

45. Once they had disposed of Mrs. Bachman, they went out of their way to try to make things such so that what Mrs. Bachman did for the employers, Mrs. Bachman would never be able to do for anyone else.

46. Mrs. Bachman has incurred counseling and medication costs as a direct result of Defendants' actions.

47. As a direct result of Defendants' tortious actions. Mrs. Bachman struggles to sleep, which has negatively affected her health.

48. Defendants' tortious actions have also triggered migraines, and have affected her ability to eat, and has also affected her love life with her husband.

49. The actions have also adversely affected her relationship with her daughters.

50. Defendants tortious actions have also caused her, and will continue to cause her, to incur legal fees at the rate of $475 an hour.

51. Defendants improperly deducted money from Mrs. Bachman's paychecks (which she never expressly authorized in writing pursuant to Utah Code Ann. § 34-28-3.

52. Defendants deliberately or intentionally caused injuries to Mrs. Bachman.

53. Defendants' acts that injured Mrs. Bachman were not merely a deliberate or intentional act that led to the injuries.

54. In other words, Defendants actually intended to injure the victim (Mrs. Bachman), or engaged in conduct that was substantially certain to cause injury.

## IV. CAUSES OF ACTION

1. Any cause of action supported by the facts, either now known or unknown, such as the violation of Utah payroll laws that relate to an employer's deductions from a paycheck when the employee has not expressly authorized the deduction in writing -Utah Code Ann. § 34-28-3;

2. violations of the FLSA (not properly paying minimum wage, overtime, and having illegally retaliated against Mrs. Bachman) under the United States Fair Labor Standards Act of 1938, §§ 7, 15(a)(3), 29 U.S.C.A. §§ 207, 215(a)(3); 29 C.F.R. § 778.111.

3. Under the Court's supplemental jurisdiction pursuant to 28 U.S. Code § 1367, intentional infliction of emotional distress, contract, and anti-defamation laws under Utah's common law.

## V. PRAYER FOR RELIEF

1. Mrs. Bachman prays that the Court order that Defendants reimburse her for all of her counseling costs, including medication, that relate to the subject matter of this suit.

2. She also prays that Defendants be ordered to pay her all the unpaid minimum wages and overtime consistent with the facts given herein.

3. She also seeks the appropriate liquidated damages owed under the FLSA, plus all of her attorney's fees and costs that relate to this case.

4. Further, she asks the Court to order that Defendants compensate her for all of the physical and emotional distress (pain and suffering) that they have caused her (in an amount that the jury/Judge deems appropriate).

5. Further, that the Court/jury award any other damages or relief that it deems appropriate such as punitive damage.

6. She also prays for a finding that Defendants' actions were willful and malicious, and willful and malicious under section 523(a)(6) of the Bankruptcy Code, which excepts from discharge a debt for 'willful and malicious injury by the debtor to another entity. In other words, that Defendants deliberately or intentionally

caused injuries to Mrs. Bachman, and that Defendants' acts that injured Mrs. Bachman were not merely a deliberate or intentional act that led to the injuries. In other words, Defendants actually intended to injure the victim (Mrs. Bachman), or engaged in conduct that was substantially certain to cause injury.

7. She also prays that the Judge order that she be reinstated at her former position with Defendants.

    DATED this 21st day of March 2018.

    /s/ Gregory B. Smith, attorney for Mrs. Bachman